The Illinois Appellate Court, 3rd Division, is now in session for Honorable Justice Margaret S. McBride, Mrs. Ireland. Good morning, everyone. You may be seated. Preferred Risk Mutual versus Church Extension Board. All right, I would ask that the attorneys that are going to argue this morning, for both sides, would please step up to the podium and identify yourselves for the record. Good morning, Your Honor. This is Richard Boonstra on behalf of the Church Extension Board. Would you spell your last name? Sure. B-O-O-N-S-T-R-A. Boonstra. All right. Good morning. Good morning, Your Honor. Jason DeVore, D as in David, E, capital B as in Victor, O-R-E, on behalf of Preferred Risk Mutual Insurance Company, now known as Guide One Mutual Insurance Company. All right. Good morning, Mr. DeVore. All right. So each of you will have about 15 minutes to present oral arguments. And from that, Mr. Boonstra, you may save out some time for rebuttal. All right? Thank you. Mr. DeVore, you may be seated. Counsel, you may proceed. Thank you. Good morning. Good morning. It's a coverage case and critical to the case is the October 8, 2010 release. Understanding the release requires an examination of the case that the release settled or the case resolved, which is the 2005 case. The issue in the 2005 case was really what constitutes an occurrence. And there was about $500,000 in dispute. That is what the presbytery was seeking. Guide One was seeking $250,000 in coverage. The basis for the 2005 suit was there were eight John Doe plaintiffs, which it turned out number six didn't exist. So there were actually seven John Doe plaintiffs. Why didn't the last one exist? I think it was just, I really don't know. It turned out there was no claim. Okay. I don't know if the person decided not to proceed or what, but there's John Doe six is referred to in the numbers, but there was no such claim. Okay. There were seven claims. And the seven claims basically affected four years of coverage, 1988, 1995, 1996, and 1997. And so from our briefs, it can be determined, obviously, that we are claiming that that is the proper scope of the release, is that it's limited to four years of coverage, because the purpose of the release was to settle the 2005 case, which involved these seven John Doe plaintiffs. Could I just ask one brief question? Sure. In the complaints, were there allegations in those seven John Doe complaints that were specifically limited to 1988, 1995, 1996, and 1997? Yes. Were there any other allegations that were not involving those precise years? Yes. And that's a great question. It reminds me that one of the most important points in the 05 litigation is that under the existing insurance policy, only the first year of abuse is counted. Okay. So if a complaint contains multiple years, only the first one is relevant. No. So in those claims, the first year of abuse is 95, 96, 97, and 98, and not the other year. 88, 95. You missed it. 1988, right, 5, 6, and 7. Correct. But doesn't the release refer to occurrences? What does occurrences mean then if you're saying it only relates to the one action? The issue in the 05 case that was never resolved was what is the definition of an occurrence? That is mentioned in the release only, I think, in paragraphs 14, 15, and 16. It talks about the 05 litigation in the release. But the issue of what constitutes an occurrence was not resolved by the case. The case was settled. The issue was whether the occurrence, there were two occurrences or one occurrence. One occurrence would be 250, two occurrences would be 500. So the release basically split it down the middle. $250,000 was paid. The 250 was assigned actually to the 1995 year, and that's evidenced by the settlement check. So it's our contention that the insurance company is taking advantage of poorly drafted release language. And they're doing that at basically two junctures in the case. First, when they did the reservation of rights letter in December 2015, they now take the interpretation of the release that it will span 16 years, which we think is bad faith. Because there were only four years that were involved. The second occasion. Well, that was because of their interpretation of the occurrence, right? Yes. But the complaints alleged allegations that spanned 16 years, didn't they? They did. Okay. Well, it's impossible for there to have been 16 claims because of the way the insurance policy is worded. It's only one claim. Even if there's multiple years of abuse or multiple years, it's still only one. So the seven John Doe plaintiffs only involved four years. John Doe 1 through 4. John Doe's 1 through 4 were all 1997. John Doe 5 was 1995. John Doe 6 didn't exist. And so 7 is 96, and John Doe 8 is 1988. So those were the only four years. So the second opportunity that the insurance company had, moving forward then two years further into the future, from 2015 now to 2017, there's additional claims that are filed. And at that point, they now take a position that's inconsistent with their previous position. In their previous position, as Your Honor noted, they take the position that there's 16 years of coverage involved. Notwithstanding that they knew at the time there were only four years that were implicated. Because their own policy only provided for the first year to be the occurrence for allegations that might have included multiple years. Right. Correct. So moving forward then two years to the second reservation of rights letter in September of 2017, now they take the position that the pre-1988 claims, we're not going to honor those either. Completely inconsistent with the position they took two years previous to that. But the judge ruled that there was a duty to defend for pre-1988, didn't he? He did. All right. Right. They were able to persuade the trial judge in this case to side with them on the 16 years. Right. But not on the pre-1988 allegations. Right. Okay. So basically they forced the presbytery to sue them in order to get coverage for the claims that are filed in 2016. The 17L644646 claims. So the trial court correctly found that the release is ambiguous. And I don't think it's possible to read that release without finding it to be ambiguous. The trial court in two of its footnotes, footnote two and footnote four, actually uses the word ambiguity. In the July 2019 order, the trial judge correctly finds in referring to the important phrase here, including but not limited to such claims and also referring to, you know, what is actually described as a claim set forth above. He indicates, at best, this broad general statement introduces an ambiguity compared to the specific time reference which would be resolved against the plaintiff as unenforceably broad. So the paragraph in the release in which this language is contained, read literally, would basically cancel coverage for any and all claims ever involving either of these two parties, which was certainly not intended and the trial judge correctly found that way. Would be resolved against the plaintiff as unenforceably broad, covering all possible claims between the parties at any time and on any basis in favor of the more specific over the general or through its own reservation of rights wherein guide one itself stated that it has potential coverage. So the trial judge unfortunately did not identify the exact years that were involved here and instead decided to agree with the insurance company's interpretation, overly broad interpretation of the release as involving, you know, 16 years. What the trial judge should have done is considered extrinsic evidence in order to determine, because he had an ambiguity, he should have considered extrinsic evidence to realize that there were only four policy years in play here involving $500,000 and $250,000 instead of basically giving up. You said a total of $850,000, not $750,000, the settlement earlier? You said $500,000 and $250,000. No, I was referring to the allegations in the 05 case. Okay. All right. You're right. In the two reservation of rights letters, it does indicate that the settlement that had previously been paid out was $850,000 total. The last $250,000 was for the resolution of the 05 case. Didn't the trial court tell you that it didn't find any ambiguity? I thought it was in the record where the trial court indicated that, even though both sides were arguing that there was ambiguity, one to the broader interpretation and the other one to the narrow interpretation. No, that's not correct. In the July 1, 2019 order, the trial court says there is an ambiguity. It refers to that in two footnotes, footnote 2 and footnote 4. Yeah. Now, in the next order, September 27, 2019, the trial court then says, at the time period of the release, the court's order is entirely clear that it applies to Mason's, quote, alleged conduct occurring in and after 1988. There is no ambiguity and no basis to clarify a more limited period. Right. He's not changing his mind. He's just saying my previous order is clear. Okay. So his order is not ambiguous, but he's not changing his mind about the ambiguity. Okay. Briefly, you've suggested at the end of your opening brief that there's a jurisdictional issue, but up above you said that the court had jurisdiction. Could you briefly comment on that? Or am I misstating your brief? Did you say there might be that one of these four orders might not be final because there was no specific amounts regarding the attorneys? Oh, yeah. I did not believe that was jurisdictional, but that it was perhaps not final and therefore not enforceable. Well, if it's not final and not enforceable, then there's a question of jurisdiction. Of course. Right. Wasn't that what you were suggesting? It is. Okay. So that's what I want you to comment on. Okay. I can do that. The reason that we raise that point is that it can't be readily determined from the orders that have been entered whether the judge's decision where he basically provided for the 16 years of coverage, which was supposed to include the pre-1988 cases, so he finds in our favor with respect to those claims, but he doesn't have a particular dollar amount. And so the question was raised. He doesn't have a particular dollar amount when he renders his decision or it's not in the order? Because I think there's two different things here. Because the orders don't indicate the amounts, but it appears in the record that there was a specific amount that was already determined. That's true. Yes. I think that it's not referred to in the order, and so then the law is can it be enforced? Can interest run on it? How is that possible when there's not an amount in the order? That's the issue that we raised. And so if this court were to, you know, affirm the trial court, and therefore that would require then the insurance company paying $190,000, which was to settle two claims, each for $95,000, and then also a small amount of attorney's fees, I think $3,000. But those are all in the record. They are. So there is a sum or number that relates to that order, isn't there? There is. Okay. So I guess I'm asking you, is it final or not final then? Because I don't think the numbers have to be stated, but if the record indicates what those numbers are, it could be enforceable. It just has to be an execution. Are you just talking about interest, or is there something else that we're missing? No, I think we were just talking about execution, including interest. That's all. All right. And certainly, you know, and I think as the trial judge noted, DECA actions sometimes involve or don't have monetary amounts. Yes. So I understand that. So with regard to the request for sanctions, our basis for sanctions is that the insurance company in December of 2015, they didn't take the position that would have been the position of more limited scope to the release, more limited effect upon the insured because of the insurance. They decided to take a position that involves 16 years of coverage and not four. So did the judge deny your request? Yes. Is the standard of review abuse of discretion?  It's the most deferential standard of review. Did you make this same argument to the trial judge, and did he specifically reject that argument? Yes. All right. So how do we go above or take the standard of review into account and say the court abused its discretion when he considered everything that you're saying? And the standard means that no rational trier of fact could have reached the same conclusion that the trial judge. It just defies, you know, logic that it would be okay for an insurance company with all the law that applies to this case, you know, construing it against the drafter, which is solely here the insurance company, resolving ambiguities in favor of the insured. When there's a question about whether there's insurance coverage or not, there should be. Instead, Guide 1 takes the position here, we're not going to provide this insurance, knowing that there were four years in play only in the 05 case. They now take a view that is, what can we get away with? I just think that defies logic. And that's the softer claim. The harder claim is two years later when they actually forced the presbytery to sue. And now even their own overly broad interpretation, they now want to expand it further yet, from 16 years now to 23 years of coverage. So blow out all the insurance coverage that the presbytery paid for year after year after year, even though there were only four years that were actually exhausted and that were covered by the release. But going to your point earlier, I mean, you indicated that the trial court even said that there appeared to be some ambiguity. Given the fact that there appeared to be some ambiguity in the language in the release, at least it appears that there might have been a bona fide dispute in terms of what did the release actually state and what did it mean? I think that's the standard, certainly. There's three possible objective interpretations of the release. Four years, 16 years, or 23 years. The 16 and 23-year periods are not supported by the record. They're not supported by the extrinsic evidence outside of the release that shows that the question was an occurrence involving $250,000 or $500,000, one occurrence in two years. That was the issue. The issue, nowhere in the 05 case were these other years involved. What about the language in the release about known and unknown? And I'm grasping for the other language. Do you know what I'm talking about? I do. Feature claims. Feature claims. Yes. So what about that? Okay. We don't, the release arguably covered future claims, but not new claims. Future claims meaning there were seven John Doe plaintiffs. Yeah. This is where we pay insurance. So for those four years, they're out. That's gone. And for even other years, for those same seven John Doe plaintiffs. But when additional plaintiffs come along in 2017 and they deny coverage, I mean. But what does this language, this broad language mean? I mean, do we take it back? Known, unknown, future, and what was the other word? Claims. Claims. No, future. There's two prongs. Whatever. You're saying that these other claims aren't encompassed in the years. Right. That the release was supposed to settle. There's no way to read this release that it's understandable in all of its provisions. The provision A conflicts with provision E, very obviously. E says claims in dispute. That's what was supposed to be addressed. That's what we agree with. But, of course, Guide 1 takes the position that A controls, and that's the provision that the trial judge said is overly broad and unenforceable. So the two provisions conflict. So I don't know that there's a good way to look at the release. But you're saying the court specifically found that that kind of language was in it. Yes. That's provided in the two footnotes. All right. All right. I'll just reserve a little bit of time for rebuttal, then. Thank you. All right. Nothing further you want to add right now. All right. We'll have your time for rebuttal. Mr. DeVore. Good morning. Good morning. So as counsel stated, there were good morning, Jason DeVore, on behalf of Presbyterian, or Preferred Risk Mutual Insurance Company, as I said before, not on this Guide 1. May it please the Court. A release is intended to provide finality and must be construed based upon the language in that release. The general release reviewed by the presbytery attorneys in this case and then signed by an authorized representative on October 10, 2010, provided finality to a dispute that was started in 2005 when the presbytery filed a complaint for declaratory judgment, seeking coverage under any and all policies issued by Guide 1 to the presbytery. That includes policies from 1981 through 2004 inclusive. That exact language is included in the release. If you look at paragraphs 13, 17, you have 13 provides the Guide 1 insured the presbytery from January 1, 1981 through January 1, 2004 under the same policies that have been renewed on an annual basis. Let me ask a question. If these specific dates and times and limitations are set forth in the release, then why was there a need to put in or about future claims? Because that kind of implies that something beyond the dates that are provided in the release. Well, we wanted to make sure that it addressed to the extent there was any extraneous items. I know that this has come up, for example, in the Rakowski case where it dealt with a right of contribution. There was a representation in the release as well by the presbytery that there were no claims that they knew of, but it's a proactive measure to basically clean up anything that wasn't specifically identified. In these future claims, were they supposed to be limited to the time period that is set out in the release, or could it be something that might be carried on beyond? Someone comes out, decide the time period, come in and say, I have a claim. Well, outside that time period, there were no other policies issued by Guide 1 to presbytery other than those from 1981 through 2004 inclusive. Well, we're talking about 24 years, 23 years? Twenty-three years, yes. And you paid out, didn't you? Didn't your policy provide that regardless of the number of these abuse claims, that they would be considered one occurrence and that would be the first year of the allegation? Beginning in 1987, there was a sexual misconduct liability form to which counsel had referred. Which includes first commencement language. First what? First commencement language. So the occurrence would be an occurrence within that policy period where the wrongful doing or the wrongful conduct first commenced. So there was a significant dispute about that particular language and where it applied and how it applied, particularly with respect to the number of policies there were. Because from 1981 through 1984 and 1984 through 1987, those were three-year policies. Those were CGL policies, typewritten, and did not include the sexual misconduct form that counsel is now referencing. I want to ask this. Your cross appeal involves the judge ruling against you vis-a-vis anything, any complaint or claim that was made before 1988? Yes. Okay. And then you're also, is there another? I have trouble finding in your brief what else your cross appeal involves. It's the, I guess, the mirror image of the Section 155 claim that was brought. But didn't he deny those? Yes. So the real issues in ours are the one you just mentioned. Yes. And then the duty to defend and identify issue, which was ruled on by the trial court in our favor. So, all right. And the real issue with respect to the application of the release, in our view, was the scope and is the scope. Sorry, was the what? The scope of the release. Yes. And, you know, the 25 D.J. started out where Presbyterian asked for all policies and it ended in 2008, October 8, with a release that references all the policies. It says there was attorney review. The terms were read and understood by the authorized representative. And there's specific references in Paragraph C to Section 155 damages. And there's also a provision in Paragraph L, which relates to reading the release in a way where it would be valid. This isn't accurate to say that you paid out on an occurrence for four years and for no other years, 1988, 1995, 1996, and 1997. That's not an accurate. Did you pay for any other occurrences outside of those years? Outside of those years. I mean, I can see where you can go on with your argument. I'm just trying to pin you down on when the settlement was made. The monies that were paid were paid for occurrences for four years and for no others. Yes. All right. And those have to be categorized under a policy year. And sometimes those are done, well, in order to get a check issued, they have to classify the claim under a certain policy year. And that's what the policy years that were chosen. And I understand also that. Well, why were those years chosen? There were seven plaintiffs, John Doe plaintiffs. Yes. How did it come about that there were these four years? Well, I was not part of that claims committee decision. Okay. But I do know that this is part of the extrinsic evidence, parole evidence argument that is being made by the presbytery, trying to use documents that were authored several years after the release was signed in contradiction of the terms of the release, which specify that everything was in the release and there were no... Well, the court interpreted it your way. Yes. What about the footnotes? How do you respond to counsel's suggestion that the court indicated that this release was ambiguous and yet denied the request for presentation of other evidence? So with respect to that particular argument, the presbytery parsed a section of a footnote, which if you look at it, it talks about the possibilities and if this were to occur. I mean, it's postulation rather than a ruling. And if it were a ruling or a finding, it should be not in a footnote. It should be in the body of the text as a basis for a ruling in favor, perhaps, of the presbytery. So in addition to that, there was an additional order that came out, and there was one in July and one in September of 2019, which went over the top of that and didn't even mention what counsel is arguing in terms of this purported ambiguity. And in my view, it's more that they're thinking of argument that could happen and facts that could be in place that aren't in place in this case. All right. You can continue unless you don't have anything further to say. On that particular part, I don't think I have anything else on that particular part. So the clear and unambiguous terms of the release provided for a $250,000 payment in exchange for release of claims for all policies from 81 to 04 inclusive. So the word inclusive, we provided some dictionary terms. It includes broad, expansive language that has been discussed, the type of language that's been discussed in a lot of cases, including, again, the Verkowski v. Lucente court matter, 104 ill second 317, particularly at 323. And the court unequivocally stated, citing a 1949 case, that you look to the release. And if it's clear and unambiguous, then you move on to the other side, where they have to prove by clear and convincing evidence that it's not ambiguous. And I think that when you look at the way the release is structured And you have numerous paragraphs outlining the claims and the policies at issue. And then you have a separate section which begins with letter. But the court ruled against you pre-1988. Yes. So aren't you sort of talking out of the proverbial? Well, no. There were allegations and there's references in the pleadings to at least until 19, dating back at least until 1988, which means it could have gone back further. In the Fifth Amendment complaint filed by Does 1 through 4, it says prior to 1997, dating back at least until 1988. But I would maintain that the focus shouldn't be on the particular allegations of those complaints. Instead, it should be focused on all the policies that were issued by Guide 1 to the prestigiary over that 23-year time period. And if you were not to Could you have included then language in the release that would be a bar to any claims raised going forward from 1981 to 2004? Does that language have been placed into this document? It is in here. Okay. It says from 1981, and you're talking about how I think it said something above inclusive. But now you're saying that the release should provide for any claim, known or unknown, future or past, from the years 1981 through 2004. Yes. Is that in the release? Yes. All right. It is. Point us to it. Okay. You have the years that are specifically delineated. Yes. So if we look at paragraph 13. Yes. Which lays out all the policies that were issued. Yes. We look at So it simply says that we issued policies beginning in 1981 through 2004. Correct. Okay. And then if we look at paragraph 17. Yes. It says that the presbytery filed this action seeking any and all coverage available under any policies issued by the presbytery to guide one. And so we pretty clearly in 05 had an action that related to all policies. And that action culminated in the settlement in 2010. It was reviewed by counsel. It was signed by the authorized representative. Okay. Yes. Here's my question. You pointed out these two paragraphs. But in this release, is there a subsequent statement that this release bars any and all occurrences or claims that have been made since 1981 through 2004? Aside from the Aside from what you said about what paragraph 13 says. Yes. And then paragraph 17. Yes. So paragraph A. Which paragraph is it? Paragraph A. A? A on page 3. Okay. C231. It says for consideration of $250,000. The parties forever discharged. Release parties from all claims, cause of action, demands, costs, expenses. And then it goes down through including claims in equity. Including but not limited to the claims by the Church Detention Board versus preferred risk within the time period set forth above inclusive. Inclusive. Okay. All right. And I think it's important. One thing in terms of the inclusive issue. It's known to be broad. And I liken it to concentric circles. So let's say there are four concentric circles. And you say, well, I'm going to have the scope of this release be the largest or be within these concentric circles inclusive. Naturally, you're not going to choose the smallest one. You're going to choose the largest one. Because otherwise it wouldn't account for the vast majority of the three larger concentric circles. And what the Presbyterian's argument is, is that we should ignore that common sense approach in favor of subjective interpretations of its view of the word inclusive as it being too vague, too general to be enforced, which goes against the public policy in a way. Couldn't that language have been worded differently instead of all inclusive? Couldn't you have included a phrase that I just said? Certainly. Okay. Now, why did the judge rule against you then on the – let's talk about the pre-1988. If it was all inclusive, the judge ruled against you. Tell me why. They were looking at – I don't think they were looking at the entire – they were trying to look at the entire agreement, but I think they had – So your interpretation, according to the judge, was really good except for before 1988. That is? Yes. Okay. All right. But why did he do that? I didn't have an opportunity to ask. Okay, but you weren't there for the hearing when he explained it or wrote the order? Why did he reject pre-1988? The order wasn't rendered at a hearing. It was issued – Yeah, okay. Well, you explain his reasoning then. There was not – well, there was – the reasoning was is that the claims were back until at least 1988 and they took – they didn't read the at least. They looked at that 1988 and they took it forward. That's the only thing that I can possibly reconcile with respect to that order. Okay. And so based upon the rules of construction for contracts, you have to look at the terms of the release. I believe they're clear without question and parole evidence certainly shouldn't be admitted. And parole evidence in this case was from several years after the release was authored. And we have an integration clause that specifically says there are no other agreements, written or otherwise, that are to be incorporated into the release. And that's why we believe it should be determined based upon the actual content. Counsel indicated that occurrence is not defined in the release. Do you agree with that? The word occurrence. The word occurrence I don't believe is defined in the release. Okay. It's defined in your policy language, right? Yes. Is there anything further you wish to add? Just one item. On the Section 155 claim, we think it's spurious. The actions taken by Guide 1, smack of good faith. And as an insurer, you have options. And one of the options is to defend under reservation and file a declaratory action. We made it very clear that that's what we were going to do on one of the claims. Subsequent claims came in when I was involved. And those were denied and soaked up within the pending declaratory action. So it's kind of unclear how that could be considered bad faith when not only did the 574 case, was it defended pursuant to reservation of rights, but all those cases were together. They were by the same firm. So they kind of got the benefit of having defense for four cases for, I believe, $3,000. They said there was $3,000 out of their pocket for one of the cases. But the idea that the presbytery was left without counsel provided by Guide 1 is simply false. Can you think further? No, Your Honor. All right. Thank you. Thank you. We'll hear final words. Yes, thank you, Your Honor. Just a few points. Number one, with respect to your point about the abuse of discretion on the 155 sanctions, there's no evidence in the record that the trial judge considered the insurance company's complete change of position in the case. Does an insurance company get to stake out one position because that also benefits them at that point and then later on take an even improved position? There's no evidence in the record that the trial judge considered that. And I would consider that to be an abuse of discretion for an insurance company to be allowed to conduct itself in this way. That's one point. And then in addition to that, and perhaps to your question about what was included in the release, I neglected to point out that in addition to paragraph E, which refers to claims which are in dispute, meaning current claims in dispute, paragraph D in the general release also says, the general release covers all liability for any past, present, or future claims for or related to insurance coverage which the releasing parties have or may have arising out of the above-referenced alleged actions and alleged wrongdoing of releasing parties, whether those claims are known or unknown or foreseen or unforeseen. In other words, that reference means only the claims related to those particular John Doe defendants and not others. There's no question that that conflicts with paragraph A in that therefore this release is ambiguous, as correctly determined by the trial judge. In addition, the definition of occurrence as is stated in the insurance policy and the way the insurance policy is set up results in the claims that were actually being addressed in the release were limited to four years. There's further evidence of that in Guide One's reservation of rights letters in December 2015 and also in September 2017 where they make reference to the $850,000 that was paid out. They actually refer to the particular years that were involved. Now the way they do it is 95 through 96, but what it really means is because the coverage runs from 1995 to January 1, 1996, so it's really just assigned to four years. It's demonstrated and supported by their own reservation of rights letters. Thank you. Thank you both. The case was well-argued, well-briefed, and it will be taken under advisement. Now the Court stands adjourned.